Filed 7/8/26  P. v. Gomez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E086382 |
| v. | (Super.Ct.No. RIF2205613) |
| ROXON ALEXIS SANTOS GOMEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samah Shouka, Judge.

Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and

Appellant.

No appearance for Plaintiff and Respondent.

1

In this *Wende/Anders* matter,[1] defendant and appellant Roxon Gomez appeals from the trial court's entry of judgment following a jury verdict convicting him of three felony sex offenses against a minor, his fiancée's prepubescent sister, V.G., and two misdemeanor sex offenses involving another victim under the age of 18. Specifically, the felony counts included oral copulation or penetration of a minor victim 10 years old or younger (count 1; Pen. Code, § 288.7, subd. (b); all further statutory references are to the Penal Code), a second count for attempting that offense (§§ 664, 288.7), and a third count for continuous sexual abuse of a child under the age of 14, requiring proof of three or more lewd acts (§ 288.5). The misdemeanor convictions were for annoying or molesting a child under the age of 18 (§ 647.6, subd. (a)), namely 16-year-old minor J.J., and for indecent exposure (§ 314).

The trial court subsequently dismissed the third felony count because the three or more lewd acts on which it rested were within the same time period as those alleged in counts 1 and 2, contravening section 288.5, subdivision (c). (See *People v. Goldman* (2014) 225 Cal.App.4th 950, 956 [statutory charging prohibition precludes "convict[ion] of both continuous sexual abuse and a discrete sexual offense [against] the same victim for acts committed during the same time period"].) In bifurcated proceedings, the court found two aggravating factors to be true: the victim was particularly vulnerable, and defendant took advantage of a position of trust to commit the offenses. (Cal. Rules of Court, rule 4.421(a)(3), (11).) At sentencing, the court imposed an indeterminate term of

---

[1] *Anders v. California* (1967) 386 U.S. 738; *People v. Wende* (1979) 25 Cal.3d 436.

15 years to life on count 1 and concurrent terms on the remaining counts. Defendant was 35 years old when he was arrested for the offenses, and 38 years old at the time of sentencing.

On appeal, our independent review of the record and the law discloses no issues of arguable merit on which to request briefing by the parties. (See *People v. Johnson* (1981) 123 Cal.App.3d 106, 109 ["an arguable issue" requires "a reasonable potential for success" on appeal].) We therefore affirm the judgment.

## BACKGROUND

Counsel's appellate *Wende* brief includes a statement of facts running more than 75 pages, summarizing the trial testimony of a dozen witnesses. In addition to the primary victim, V.G., who was 11 years old at the time of trial, other witnesses included: V.G.'s mother and father, who recounted the circumstances in which V.G. revealed defendant's abuse; V.G.'s older half-sister K.M., who testified defendant fondled her breast when she was 15 or 16 years old, which she revealed only after V.G. disclosed she was abused; and K.M.'s boyfriend, who described the circumstances in which K.M. told him that defendant touched her. Other witnesses included: (1) the Child Advocacy Center's forensic interviewer who conducted two videotaped interviews of V.G. that were played for the jury; (2) the medical doctor who examined V.G. after her parents reported the abuse when they learned of it; and (3) a child psychology professor who testified as an expert witness regarding issues related to delayed disclosure of sexual abuse by children.

3

The detective who investigated defendant's reported abuse of both V.G. and J.J. also testified, as did: (1) J.J. regarding the incident in which defendant masturbated in his vehicle while looking at her as she walked by his car leaving her high school campus, and (2) the campus monitor at J.J.'s high school who photographed defendant's license plate number while investigating that incident, which occurred in September 2022, about one month before V.G.'s parents reported V.G.'s abuse. Defendant's fiancée, Jasmine, with whom he had an infant child V.G. used to look forward to playing with when the couple visited V.G.'s home, testified as his sole defense witness.

For our purposes on appeal, a brief summary of V.G.'s testimony regarding the abuse suffices. The first time she remembered defendant touching "private parts" on her body was on her buttocks over her bikini swimsuit at a water park when she was about eight years old, when he was teaching her to swim. In a later incident close to a holiday or birthday when defendant and Jasmine would visit, defendant grabbed her hand while she was going to get ice from the dispenser in the kitchen and pulled her to the table where he was sitting. While sitting close to her at the table, defendant put her hand on his private part "where he pees out of" and moved her hand up and down; she did not remember if he had underwear on, but she felt hair there on his body.

With his other hand, defendant touched her vagina under her underwear, moving his hand up and down from where she peed to "really far down" to where she pooped, including moving part of his hand in and out of her vagina, which caused her pain there. V.G. managed to pull away and rejoined K.M., who was watching a movie in the nearby

4

living room. Defendant touched her privates "where she peed" two or three times in total, but this was the only time he inserted his finger inside her vagina.

V.G. testified about another incident when defendant was present for a family party and he asked V.G. if she wanted a lollipop. When she said yes, he took out his private part and tried to put it in her mouth, with one hand on her head and the other on his private part. But she was pushing her head backwards to resist him and was able to escape.

R.G. described other incidents in which defendant had touched her in ways that made her feel uncomfortable, including when he buckled his son into his car seat and brushed his hand against her upper thigh. Another time, she entered the family RV on a camping trip, saw that defendant was inside and when she asked him to tie her shoe, he did so but he also touched her private part where she peed in the process, over her clothes. Another time while family photos were being taken, defendant tried to touch her chest when he had his hand on her shoulder and he reached down and squeezed her "boob," making her uncomfortable.

R.G. did not tell anyone about the ways defendant touched her because she thought she had done something wrong when he grabbed her hand and made her touch him, too. She told her mother about the incidents of abuse when, after a video in her Bible study class at church about inappropriate touching, her mother was helping her later that night with her homework related to the video. The homework questions were in Spanish, which her mother translated for her, including one that asked "if someone ever

5

touched [you], what would you do?" Her mother asked her the question, she answered that defendant had touched her, telling her about the abuse, and her mother cried. Her father had come into the room too.

When Hector, V.G.'s father, later told his adult daughter and V.G.'s half-sister, K.M., about V.G. revealing the abuse, K.M. started crying and said, "I knew it. I knew it. I knew he was going to do that." K.M. then spoke to the detective about her incident with defendant when she was a teenager. At trial, K.M. testified about the time she had slept over at defendant and Jasmine's home, which she told Jasmine about, in which defendant had crawled into bed with her while she was sleeping, scooted up against her in the early morning, fondled her breast while pretending to be asleep, and did so again when she moved away. Jasmine and defendant had been sleeping on the floor in the same room before defendant got into the bed with K.M.

After the jury convicted defendant as noted above, the trial court in imposing defendant's sentence stated that, having "watched the victim testify" during the trial, it found R.G.'s testimony "to be true. I found her to be credible."

## APPEAL AND REVIEW

Following the verdict, sentencing, and entry of judgment, defendant appealed. This court appointed appellate counsel. Counsel's review of the record and legal research uncovered no arguable issues to raise on appeal, including after consultation with Appellate Defenders, Inc. In reaching that conclusion, counsel noted three questions for our potential consideration in our independent review. Those issues are: (1) Was there

6

sufficient evidence to support the convictions; (2) Did the court err in admitting evidence of uncharged offenses (Evid. Code, § 1108); and (3) Did the court err in dismissing count 3, instead of using it as a basis for a determinate sentence rather than the indeterminate sentence the court imposed?

Defendant did not respond to notice from this court of his opportunity to file a supplemental brief on his own behalf, in propria persona.

Having independently reviewed the record for potential error, we are satisfied defendant's attorney has fully complied with the responsibilities of counsel and no issue of arguable merit on appeal exists.  (*People v. Kelly* (2006) 40 Cal.4th 106, 126; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)  We therefore affirm the judgment.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

LEE                        
                                                            J.

We concur:


FIELDS                   
                        Acting P. J.


RAPHAEL                 
                             J.